HARRY MICHAELSON, PROSECUTOR, v. TOWNSHIP OF WALL, RESPONDENT.

---

WATSON C. COOPER, PROSECUTOR, v. TOWNSHIP OF FRELINGHUYSEN, RESPONDENT.

---

WILLIAM ROBSON, PROSECUTOR, v. TOWNSHIP OF BLAIRSTOWN, RESPONDENT.

Argued June 14, 1918—Decided November 7, 1918.

1. The Local Option Liquor law (*Pamph. L.* 1918, *p.* 14) embraces but one object which is expressed in its title.
2. The Local Option Liquor law (*Pamph. L.* 1918, *p.* 14), as set forth in its title, is an act to prohibit the sale or offer or exposure for sale or furnishing or otherwise dealing in intoxicating liquor as a beverage in any of the municipalities classified in the act, and the act is not invalidated because the rights of parties manufacturing liquor within those municipalities, but selling, dealing

in or furnishing their products in wholesale quantities to persons outside the limits are preserved by a saving clause in the body of the act.

3. The provisions of section 19 of the Local Option Liquor law (*Pamph. L.* 1918, *p.* 14), saving from the operation of the act such municipalities where prohibition is already in force does not render the act unconstitutional as a special act regulating the internal affairs of towns and counties, because, first, there are no towns where prohibition is in force except under acts relating to churches, camp meetings or state institutions and adjoining territory, and second, the saving clause is not a necessary part of the legislative scheme laid down in the act and may legitimately be disregarded if necessary to save its constitutional validity as provided for in section 31 of the act.

4. The Local Option Liquor law (*Pamph. L.* 1918, *p.* 14) is not in violation of the provisions of section 1 of the fourteenth amendment to the federal constitution.

5. A legislative enactment does not fail because in dealing with a fact reasonably capable of ascertainment, such as the number of legal votes cast at a last preceding election, the legislature has omitted to point out the precise method for ascertaining and counting those votes.

6. The hearing upon a petition for an election under the Local Option Liquor law (*Pamph. L.* 1918, *p.* 14) is a judicial, or, at least, a *quasi*-judicial one and the statutory procedure, provided by the act, should be strictly followed, especially as relates to the giving to persons interested, proper notice and an opportunity to be heard.

7. A member of a municipal council does not have such an interest in the result of a local option election as to disqualify him from sitting in judgment on the sufficiency of a petition which he has signed.

8. It is not necessary to the validity of election proceedings under the Local Option Liquor law that the signers of the petition for such an election should append to their signatures the name of the street or road on which they reside, the provision to that effect in the statute being merely directory and mainly for the convenience of the governing body in ascertaining the genuineness and legitimacy of the signatures.

On *certiorari.*

Before Justices PARKER and MINTURN.

For the prosecutor Michaelson, *Charles E. Cook* and *Robert H. McCarter.*

For the prosecutor Cooper, *Levi H. Morris.*

For the prosecutor Robson, *William A. Dolan.*

(*Mr. Harry Heher* also presented a brief as *amicus curiæ.*)

For the respondents, *George S. Hobart, Benjamin F. Jones* and *Egbert Rosecrans.*

The opinion of the court was delivered by

PARKER, J.    These three writs of *certiorari* bring up for examination and adjudication special elections held in the several townships named, and the proceedings leading up thereto, under and by virtue of chapter 2 of the laws of 1918 (*Pamph. L., p.* 14) known as the Local Option Liquor law. Attack is made both on the validity of the act itself and on the regularity of the procedure pursued in holding the elections in question.

Objection to the constitutionality of the act is made upon several grounds. The first of these to be noticed is that the title of the act is broader than its body and that this invalidates it under the constitutional provision requiring that every law shall have but one object and that shall be expressed in its title.

The title of the act is as follows: "An act to prohibit the sale, or offer, or exposure for sale, or furnishing or otherwise dealing in intoxicating liquor as a beverage and the granting of licenses therefor in any town, township, village, borough, city or other municipality (not a county) in this state where the legal voters thereof shall decide by a majority vote in favor of such prohibition or the continuance thereof." The argument made is that this title is equivalent to a statement that the act is to apply in all municipalities of the various classes named, but that in the body of the act at section 19 there is a saving clause providing that nothing in the act shall affect, amend, or repeal any other law which now prohibits within the limits of any municipality, or any portion thereof, either the sale, or offer, or the exposure for sale, or furnishing or otherwise dealing in intoxicating liquor, or the keeping of a place where intoxicating liquor is sold, furnished

or otherwise dealt in (*p.* 30). And it is further argued that this exception which is apparently intended to prevent the act taking effect in such places, for example, as Asbury Park, vitiates the whole act because the title fails to indicate that certain municipalities forming a distinct class are to be excepted; and the case of *Beverly* v. *Waln,* 57 *N. J. L.* 143, is relied on. That case has been somewhat misunderstood and seems to have required some later explanation on the part of the Court of Errors and Appeals, which in the later decision of *Johnson* v. *Asbury Park,* 60 *Id.* 428, pointed out on page 431 that the act held bad in *Beverly v.* Waln was so held on the sole ground that its title was manifestly false and deceptive in indicating that legislation was intended with regard to all cities in the state, whereas the body of the act dealt with only cities of the third class, and the court went on to say: "It was not held nor was it intended to hold that an act legislating respecting some objects fairly included within the title will be invalidated because it does not include all such objects except where the title expressly or by necessary implication evinces an intent to legislate as to all of them." We consider that the title in this respect is sufficient.

Secondly, it is urged that the title is misleading because it indicates an intention to prohibit the sale, &c., of intoxicating liquor when the intention is really to regulate such sale. The argument rests on the ground that because the act is made by section 29 inapplicable to any manufacturer of intoxicating liquor whose manufactory is located in a municipality wherein the sale of intoxicating liquor as a beverage is prohibited so far as respects his right to sell, deal or furnish his product in wholesale quantities to any person or persons outside the limits of said municipality, this feature makes it properly an act to regulate the sale and not an act to prohibit the same. But we fail to see the substantial merit of the point. Taken generally, the act is unquestionably an act to prohibit the sale or offer or exposure for sale or furnishing or otherwise dealing in intoxicating liquor as a beverage in any of the municipalities classified in the act, and it seems to be a

far cry to say that it is turned into a mere regulative act because the rights of parties manufacturing liquor within those municipalities, but selling, dealing, or furnishing their product in wholesale quantities to persons outside the limits are preserved by way of this saving clause. We think there is nothing in this objection.

The next point urged against the constitutionality of the act is that it is a special act regulating the internal affairs of towns and counties because of the exception already adverted to and occurring in section 19, of municipalities where prohibition is already in force. To this we think there are two answers. The first answer is that so far as appears there are no towns where prohibition is in force except under acts relating to churches, or camp meetings, or state institutions and the adjoining territory. The statutes cited are *Pamph. L.* 1880, *p.* 392, which relates to camp meetings; *Pamph. L.* 1896, *p.* 53, also relating to camp meetings; *Comp. Stat., p.* 4961, § 19, relating to the epileptic village, and *Comp. Stat., p.* 3190, § 59, relating to the state asylum for the insane. As respects all these, the case of *Sexton* v. *Asbury Park,* 76 *N. J. L.* 102, seems to be adequate authority for saying that they are a legitimate class of municipalities or territory for constitutional purposes. There is one other act cited (*Pamph. L.* 1907, *pp.* 188, 246; *Comp. Stat., p.* 1438), which is a charter act concerning cities of the second class under twenty thousand inhabitants, but it is not made to appear that any city has been organized thereunder, and if not, the exception in section 19 of the act under consideration does not apply.

The second answer is that the saving clause in section 19 is not a necessary part of the legislative scheme laid down in the act and may legitimately be disregarded if necessary to save its constitutional validity; and that this is clearly within the intention of the legislature is shown by section 31 which provides that "if any provision or provisions of this act shall be held for any reason to be unconstitutional or invalid, it shall not affect or impair the validity of the other provisions of this act or any of them."

The third attack upon the constitutionality of the act is that it is in violation of the fourteenth amendment of the federal constitution, and this on four grounds:

(*a*) That there is a discrimination in section 24 between licenses issued before and licenses issued after the passage of the act with respect to the time for which such licenses shall respectively continue after the adoption of the law. We think there is nothing in this; and that, on the contrary, a failure to make the distinction might have jeopardized the validity of the act on the very ground now urged; for licensees who were licensed before the act was passed stand in a much more meritorious position than those licensed after the adoption of the act with knowledge of its provisions and of the liability of having their licenses taken away thereunder. Such licensees accepted their licenses with full notice of the situation and necessarily more or less at their peril.

(*b*) In providing a summary review of the proceedings on the application of a voter only in cases when the governing body of a municipality determine that the petition for a referendum election is insufficient and not in cases wherein the determination is to the contrary. As to this, it is sufficient to say that no such case is before us, and that this is likewise a feature of the act which could be safely exscinded if unconstitutional, without impairment of the legislative scheme.

(*c*) In that the right of petitioning for an election is limited to those persons that voted at the last election in the municipality. This is a mere question of putting the machinery of the statute in motion and of selecting a class of citizens who should appropriately be vested with that right. Counsel do not seem to suggest any better method, whether the right of signing the petition should be conferred upon all citizens, whether sane or insane, infants or what not. If the act had said freeholders instead of those voting at the last election, there could be no doubt of the propriety of designating that class, and we fail entirely to see any impropriety in fixing upon the voters of a former election as petitioners. We think that, in fact, this is the usual course as prescribed

by other important legislation of similar character, for example, the Commission Government act of 1911 (*Pamph. L., p.* 462, § 18), which provides that the election to determine whether commission government shall be adopted shall be called by the city clerk upon the request or petition in writing of twenty percentum of the legal voters voting at the last general election. The objection seems to us to be trivial.

(*d*) As conferring an unconstitutional delegation of legislative power. The only argument made is that in addition to the no license feature that was considered in the leading case of *Paul* v. *Gloucester,* 50 *N. J. L.* 585, the present act provides that if the election result favorably to prohibition, not only shall a license thereafter not be granted, but by section 20 any person thereafter selling, exposing for sale, &c., shall be guilty of a misdemeanor, and on a second conviction, shall be guilty of a high misdemeanor; and that, in the language of counsel's brief, "the effect of this important distinction in the act is to enable the people of a community to usurp legislative functions and repeal existing license laws and criminal statutes." We see no force in this argument. Plainly the legislature might have enacted absolute prohibition and could properly have inserted in such enactment a provision that anyone selling liquor within the state should be guilty of a high misdemeanor, or the legislature instead of taking the responsibility itself of enacting state-wide prohibition, might have left the matter to the voters of the state, as was done in the case of the jury law, and in such case we think that the insertion of a penalty in the referendum act would have been clearly legitimate. The only difference between that case and the present one is that the adoption of the act, instead of being general, is to be localized, and this was precisely the point dealt with in Paul *v.* Gloucester. What the legislature has now said is that in municipalities where prohibition is adopted by popular vote, certain penalties shall be visited upon the sale of liquor. This is not a delegation to municipalities of the right to prescribe the punishment for crimes, but is a delegation of the right to prescribe pro-

hibition; and when prohibition has been adopted, the penalty for its violation is fixed by the legislature itself.

The last point raised against the validity of the act is that it states no method of ascertaining the number of legal ballots cast at the last general election for members of the assembly, which ascertainment is of course necessary in order to enable the governing body to decide whether a sufficient number of names has been signed to the petition; but if this is a valid objection to the act, it would be likewise a sufficient objection to the Commission Government act (see *Pamph. L.* 1911, *p.* 481) and, we doubt not, numerous acts of similar character. In the litigation relating to the adoption of commission government in Jersey City, we think it was held, at *nisi prius,* that the normal way to ascertain the number of voters at the preceding election was to count the ballots remaining in the ballot boxes. In that case the former ballots seem to have been lost or destroyed, and it was necessary for the legislature to intervene. *Pamph. L.* 1913, *p.* 916 (second special session). At all events, it seems trivial to argue that a legislative enactment should fail because in dealing with a fact reasonably capable of ascertainment such as the number of legal votes cast at a last preceding election, the legislature has omitted to point out the precise method for ascertaining and counting those votes.

This disposes of the objections to the validity of the statute. We pass now to those urged against the procedure and, first, with respect to the alleged failure to give such public notice of the meeting of the council for consideration of the validity of the petition as is required by the act. The requirement is (section 2) that the municipal clerk shall at least five days before the date fixed for such meeting, post certified copies of the notice of the hearing on the petition in not less than five conspicuous places in the municipality, and also publish a copy of such notice at least once in a newspaper published in such municipality, or, if none be therein published, then in a newspaper published in the county wherein such municipality is located and circulating in such municipality. The giving

of this notice is important because the hearing upon the petition is made a public hearing, and the council is required to hear any objections that may be made to the petition, and also any evidence that may be submitted at the hearing whether or not said petition is sufficient. (Section 4.) Also by section 10 it is provided that at the hearing on the petition such governing body shall keep a record of the hearing and the testimony presented by the petitioners, and their opponents may be represented in person or by attorney, and shall have the right to have copies of all the papers and proceedings and a transcript of the testimony, and the right to present evidence and to cross-examine witnesses. Hence, it is obvious that the hearing is judicial or, at least, *quasi-judicial* and, according to the well-known rule, the statutory procedure should be strictly followed, especially as relates to the giving to persons interested proper notice and an opportunity to be heard. In the case of Wall Township the evidence satisfactorily shows that notices were not posted in time, and it also appears by the testimony of the prosecutor that he was not aware of the council meeting. This we think was fatal and vitiated all subsequent proceedings, including the election.

In the case of Frelinghuysen Township the election was held on the twelfth of the month, and it is objected that the notices were dated on the tenth. The date is unimportant; it appears that they were posted on the fifth, and they cannot be invalidated because they were dated wrong.

As to the advertisement, it appears in the Wall case that there were no advertisements, and this is an additional reason for holding the election in that township invalid. In the Frelinghuysen case the advertisement was had, but not at least five days before the council meeting. On this point the language of the act is a trifle obscure, but we think the plain legislative intent was that there should be five days' notice by advertisement as well as by posting. In opposition to this it is urged that where there are weekly papers this requirement, if enforced, might compel the insertion of the advertisement

in the second issue of the paper preceding the meeting. There seems, however, to be no hardship in this and, at most, it would require publication in an issue appearing eleven days before such meeting. The exact language of the act is "certified copies of the notice for the hearing on such petition shall, at least five days before the date fixed for such meeting, be posted," &c., "and a copy of said notice shall also be published by said clerk at least once in a newspaper published in such municipality, or if none then," &c. We do not think that the intention of the legislature would be fulfilled by publishing an advertisement in a newspaper appearing, for example, on the day before the election. We think, on the contrary, that the legislature intended five days' notice to be given to all citizens who might chance to read it on the bulletins where it was posted, or by a newspaper likely to come into their houses. Such advertisement not having been had in the township of Frelinghuysen, the result is to vitiate the election in that township.

The next objection is that in all three cases the petition was signed by one of the municipal council and that said councilman had such an interest in the result as to disqualify him to sit in judgment on the sufficiency of the petition. To this, however, we do not agree. In the case relied on, *Traction Company* v. *Board of Works,* 56 *N. J. L.* 431, the councilman challenged was a stockholder in the street railway whose privileges were under consideration—a very different affair. We do not think it has ever been held that a councilman was disqualified from passing on a petition for a public improvement in his municipality because he happened to have signed it himself. In the case of *Batcheler* v. *Avon-by-the-Sea,* 78 *Id.* 503, a petitioner for the improvement acted as a commissioner of assessment, and this was held legitimate. The objection should not prevail.

The next objection is that many of the petitioners did not state the name of the street or road on which they resided as provided in the statute. This requirement we think was merely directory and for the convenience of the governing

body in ascertaining the genuineness and legitimacy of the signatures. In connection with this it is urged in the Frelinghuysen case that it did not appear after their signatures that they lived in the municipality at all; but this is distinctly stated in the body of the petition and we think that is sufficient.

Next, in the Blairstown case, it is objected that the township was incorrectly named in that in the petition it is called "The township of Blairstown, county of Warren, State of New Jersey," whereas the correct legal name of said township is "The township of Blairstown in the county of Warren." We hardly think that this objection needs special discussion, or that it is necessary to spend time on the similar objections to the affidavits to the petition where it is named as Blairstown township. The act requires that the municipality shall be "designated," and quite obviously if it is designated in such a way as to be recognized and differentiated from any other municipality, this should reasonably be sufficient.

We also consider that it was sufficient for the petitioners in signing their names to use initials instead of writing out the first and middle names in full. Nor, in our judgment, was it fatal to the procedure that in one or more cases the copies posted were not certified. The act prescribes that they shall be certified, but contains no formula for such certificate. After all, the essential thing is that there shall be legible notice to all persons interested of the intention of holding a council meeting at a specified time and place not less than five days after the promulgation of the notice. We should not be willing to set aside an election because the municipal clerk had failed to add an official certificate of the genuineness of the copy.

Finally, in the Frelinghuysen case, it is urged that the election was invalid because of certain matters not appearing on the face of the minutes or the files, to wit, that the minutes do not recite the posting and publication of the notices; that there is no affidavit of the town clerk with respect thereto, and no adjudication of the sufficiency of the preliminary pro-

ceedings by him, that there is no affidavit of publication in the newspaper, that the minutes do not recite that three committeemen named were in fact the township committee of said township. All of these objections seem frivolous; it is not the minutes or the files that make or mar the legal sufficiency of the procedure, but the actual facts with relation to such procedure; if the statute was in fact followed the election cannot be invalidated because, for example, the town clerk failed to file an affidavit that the notices were posted, though in fact he had posted them. Again in the same case it is argued that the entry on the minutes relating to the sufficiency of the petition is itself insufficient because it does not adjudge the sufficiency of the petition but only that it is signed by thirty per cent. of the voters. This, we think, is answered by the language of the act itself in section 6, that if the municipal body shall find the petition to have been signed by more than thirty per cent. of the voters, then the petition shall be deemed sufficient, and the governing body shall forthwith order an election. The governing body having found the petition to have been signed by at least thirty per cent. of the voters, the adjudication of sufficiency would seem to have followed as a matter of course.

These, we think, are all the objections urged by counsel against the sufficiency of the procedure.

The result we reach is that in the Wall case the election is invalid and must be set aside for failure to post notices of the council meeting and failure to advertise as required by the act; that in the Frelinghuysen case the election should be set aside because of the failure to advertise in due season; in the Blairstown case the writ should be dismissed as nothing appears, either on constitutional grounds or in the procedure, that should invalidate it.