This is an appeal from a judgment of the district court of Ward county directing a peremptory writ of mandamus to issue, commanding the defendants as city commissioners of the city of Minot to call a recall election, pursuant to certain petitions for such election certified to said city commissioners by the city auditor.
The statute providing for the recall of city officers was first enacted in 1911. Laws 1911, chap. 67. It was re-enacted, with certain amendments, in 1913 (Laws 1913, chap. 79), and became part of the Compiled Laws of 1913, §§ 3535-3539. The original enactment related, not only to the recall, but also, to the initiative and referendum of city ordinances. As originally enacted it applied only in cities that had adopted the Commission form of city government.
Section one of the act, relates to the recall, and reads thus:
Sec. 3835. Recall. "The holder of any elective office in cities which may adopt or have adopted the commission plan of government under any of the laws of this state applicable thereto may be removed at any time by the electors qualified to vote for a successor of such incumbent. The procedure to effect the removal of an incumbent of an elective office shall be as follows: A petition signed by electors entitled to vote for a successor to the incumbent sought to be removed, equal in number to at least thirty per centum of the entire vote for all *Page 382 
candidates for the office of president of the city commission cast at the last preceding general municipal election, demanding an election of a successor of the person sought to be removed, shall be filed with the city auditor, which petition shall contain a general statement of the grounds for which the removal is sought. The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number. One of the signers of each such paper shall make oath before an officer, competent to administer oaths, that the statements therein made are true as he believes, and that each signature to the paper appended is the genuine signature of the person whose name it purports to be. Within ten days from the date of filing such petition the city auditor shall examine, and from the voter's register ascertain whether or not said petition is signed by the requisite number of qualified electors, and if necessary, the board of city commissioners shall allow extra help for that purpose, and he shall attach to said petition his certificate showing the result of said examination. If, by the auditor's certificate, the petition is shown to be insufficient it may be amended within ten days from the date of said certificate. The auditor shall, within ten days after such amendment, make like examination of the amended petition, and if his certificate shall show the same to be insufficient, it shall be returned to the person filing the same; without prejudice, however, to the filing of a new petition of the same effect. If the petition shall be deemed to be sufficient, the auditor shall submit the same to the board of city commissioners without delay. If the petition shall he found to be sufficient, the board of city commissioners shall order and fix a date for holding the said election, not less than thirty days nor more than forty days from the date of the auditor's certificate to the board of city commissioners, that a sufficient petition is filed. The board of city commissioners shall make, or cause to be made, publication of notice and all arrangements for holding such election, and the same shall be conducted, returned and the result thereof declared in all respects as are other city elections. The successor of any officer so removed shall hold office during the unexpired term of his predecessor. Any person sought to be removed may be a candidate to succeed himself, and unless he requests otherwise in writing, the clerk shall place his name on the official ballot without nomination. In any such *Page 383 
removal election, the candidate receiving the highest number of votes shall be declared elected. At such election if some other person than the incumbent receives the highest number of votes, the incumbent shall thereupon be deemed removed from the office upon qualification of his successor. In case the party who receives the highest number of votes should fail to qualify within ten days after receiving notification of election, the office shall be deemed vacant. If the incumbent receives the highest number of votes he shall continue in office. This said method of removal shall be cumulative and additional to the methods heretofore provided by law."
Section 2 of the act (Comp. Laws 1913, § 3836), relates to the proposal of city ordinances for enactment pursuant to initiative petition. It provides:
"Any proposed ordinance may be submitted to the board of city commissioners by petition signed by electors of the city equal in number to the percentage hereinafter required. The signatures, verification, authentication, inspection, certification, amendment and submission of such petition shall be the same as provided for petition under § 3835. If the petition accompanying the proposed ordinance be signed by electors equal in number to fifteen per centum of the votes cast for all candidates for president of the city commission at the last preceding general municipal election and contains a request that the said ordinance be submitted to a vote of the people if not passed by the board of city commissioners, such board of city commissioners shall either
"(a) Pass said ordinance, without alteration, within twenty days after attachment of auditor's certificate to the accompanying petition, or,
"(b) Forthwith, after the auditor shall attach to the petition accompanying such ordinance his certificate of sufficiency, the board of city commissioners shall call a special election, unless a general municipal election is fixed within ninety days thereafter, and at such special or general municipal election, if one is so fixed, such ordinance shall be submitted without alteration to the vote of the electors of said city. But if the petition is signed by not less than twenty-five per centum of the electors, as above defined, then the board of city commissioners shall, within twenty days, pass said ordinance without change, or submit the same at the next general city election occurring not more than *Page 384 
thirty days after the auditor's certificate of sufficiency is attached to said petition. . . ."
Section 3 of the act (Comp. Laws 1913, § 3837), relates to the referendum of ordinances. It provides that all city ordinances shall be subject to the referendum "except an ordinance for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency and is passed by a four-fifths vote of the board of city commissioners." It further provides that a referendum petition "shall be in all respects in accordance with the provisions of said § 3836, except as to the percentage of signers and be examined and certified by theauditor in all respects as therein provided."
Section 4 (Comp. Laws 1913, § 3838), reads thus: "Petitions provided for in this chapter shall be signed by none but legal voters of the city. Each petition shall contain, in addition to the names of the petitioners, the street and house number in which the petitioner resides, his age and length of residence in the city. It shall also be accompanied by the affidavit of one or more legal voters of the city, stating that the signers thereof were, at the time of signing, legal voters of said city, and the number of signers at the time the affidavit was made."
Section 5 provides for the calling of an election to abandon the city commission plan of government and change back to the city council system.
These statutory provisions were all embodied in the Compiled Laws of 1913, being §§ 3825 to 3839, inclusive. All the provisions remain as so embodied with the exception of § 3825 relating to the recall of city officers. This section was amended and re-enacted by the legislative assembly in 1919, chapter 81, Laws 1919. The only changes made by the re-enactment were: It was provided (1) that "after the said petition is filed with the city auditor no signer on said petition shall be allowed to remove his name or cause the same to be removed from said petition;" and, (2) that if the city auditor on examination finds a recall petition insufficient his certificate "shall show why said petition is deemed insufficient." Section 3835, as amended by chapter 81, Laws 1919, was again amended and re-enacted by the legislative assembly in 1923, chapter 173, Laws 1923. This latter enactment made two important changes in the statute: (1) The recall was made applicable as well to cities operating under the council form of government *Page 385 
as those operating under the commission plan; and (2) the provision in chapter 81, Laws 1919, to the effect that no signer could remove his name from a recall petition was eliminated and in lieu thereof a provision was inserted to the effect that "after the said petition is filed with the city auditor any petitioner shall be allowed to withdraw his name from said petition within five days from the date of filing the same with the city auditor." But both chapter 81, Laws 1919, and chapter 173, Laws 1923, retained and re-enacted in exact language the provisions contained in § 3825, relating to the form, verification and examination of recall petitions. Both the 1919 and 1923 enactments related solely to the recall. In other words, they purported merely to amend and re-enact § 3825, Comp. Laws 1913, and did not purport to affect in any manner §§ 3836-3839, Comp. Laws 1913.
The material facts are not in dispute, and are stated in appellant's brief thus:
"The city of Minot has adopted the commission form of government. A.J. Brunner is a duly elected and qualified commissioner of said city having supervision of the police and fire department of the city. On the 18th day of March, 1926, petitions were filed in the office of the city auditor, bearing the names of 1,190 persons purporting to be electors of the city of Minot duly qualified to vote for a successor to the said A.J. Brunner, praying that an election be held for the purpose of electing a successor to said A.J. Brunner. This petition alleged in general terms the grounds for which the removal was sought. After five days during which there were thirty withdrawals signed by parties whose names appeared on the petitions, the city auditor proceeded to examine and from the voters register ascertain whether or not said petition was signed by the requisite number of qualified voters. After such examination, he certified the result thereof to be:
"That he found and determined that there were 304 names on said petition corresponding exactly with names on the voters register; that there were 131 names on said petitions which did not exactly correspond with the names on the voters register but which he was convinced from his own knowledge were signatures of persons whose identity was the same as persons whose names appeared on the voters register. He further certified that the total vote cast for president of the board of city commissioners of the city of Minot at the last preceding *Page 386 
general municipal election was 3,473 votes and that 30 per cent of said number was 1,042. He further certified and it is a fact that the petitions so filed did not contain in addition to the names of the petitioners and their street or house number any statement whatsoever as to the age or length of residence in the city of any of the signatories thereto, and he further certified that the said petitions were insufficient.
"Thereafter the said petitions were amended by filing additional petitions in exactly the same form and purporting to contain 839 names of voters qualified to vote for a successor to the said A.J. Brunner. Again the city auditor proceeded to examine and from the voters register ascertain whether such petitions were signed by the requisite number of qualified voters, and thereafter certified that he had made such examination, and that said petitions were signed by more than 1,042 registered, qualified and legal voters of the city of Minot, after deducting and not counting the names withdrawn, and without delay, the petitions together with the said certificate, were presented to the board of city commissioners of the city of Minot. Thereupon the board of city commissioners proceeded to examine the said petitions and consider the same and to hear evidence with respect thereto and did then find and determine and it is a fact that the said petitions wholly failed to contain any statement whatsoever showing or tending to show the age or length of residence in the city of any signer thereon, and that the affidavits attached to the said petitions and required by law, were false and fraudulent in this: that many of the names attached to each of the said petitions were written thereon by others than those purporting to have signed the same, and that this fact appeared from the face of the petitions. Thereafter the board found and determined that the said petitions were insufficient in form and substance and by resolution directed the city auditor to return the said petitions to the person filing the same without prejudice to the filing of a new petition of the same effect. Thereafter the relator applied to the court for a writ of mandamus herein. An alternative writ was issued and on the return day thereof, the defendants first moved to quash the writ. This motion was taken under advisement and ruling thereon reserved. The defendants thereafter filed their return to the said writ setting up the facts aforesaid and praying that the writ be denied. Thereupon the *Page 387 
plaintiff filed a reply largely in the nature of a general denial and thereupon the court ruled that he would hear no evidence in the matter; that in his opinion, the legislature had committed the jurisdiction to pass upon the sufficiency of the petitions either to the city auditor or to the board of city commissioners and that which ever of the two had jurisdiction to determine the matter, in his opinion, the decision of the tribunal possessing the jurisdiction was not reviewable by the court in this proceeding. Thereupon it was stipulated in open court that the petitions together with the certificates made by the city auditor and the resolutions showing the action of the board of city commissioners, should be filed in the case as a part of the original petition for the writ of mandamus. Thereafter the court made and filed his written opinion in said matter and issued an order directing the granting of the writ prayed for and judgment was issued pursuant to said order and the writ issued."
From the judgment entered this appeal is taken.
Supplementing the above statement of facts, it may be said that an examination of the papers composing the recall petition involved in this case discloses that they comply in every particular with § 3835, Comp. Laws 1913, and the acts amendatory thereof; but that they do not conform with § 3838 in this that there is not added to the name of each signer "his age and length of residence in the city." In other words, each signer to the petition has added to his signature his place of residence, giving the street and number or the equivalent thereof, but has not added "his age and length of residence in the city."
The questions presented on this appeal are:
(1) Is the petition rendered legally insufficient because it did not contain after the name of each signer, the age of the signer and the length of his residence in the city?
(2) Does the board of city commissioners have power to sit in review upon the action of the city auditor, and to inquire into the genuineness of signatures and the legal qualifications of the petitioners?
(3) Does the return of the respondents present any issue of fact for determination in this proceeding?
The questions will be considered in the order stated.
(1) In our opinion the failure to add to the names of the signers to the petitions the age and length of residence in the city of such *Page 388 
signers does not render the petition invalid. It will be noted that § 3835 purports to prescribe not only the substance but the form of recall petitions. It provides that "each signer shall add to his signature his place of residence, giving the street and number." It further provides the form and substance of the affidavits to be attached to the petition. As we have noted above, § 3835 was amended and re-enacted in 1919 and again in 1923. Both of these enactments affected only § 3835 and did not affect any of the other provisions of the act, of which it was originally a part. In other words, the legislative enactments of 1919, and 1923 affected only the recall provision and had no reference whatever to either the initiative or referendum provisions. The 1923 enactment made the recall operative in cities having a council form of government, as well as in those operated on the commission plan. The initiative and referendum provisions, however, remain applicable only to cities having the commission form of government. We have considerable doubt whether § 3838 is applicable to recall petitions. But assuming, without deciding, that that section applies to recall petitions it does not follow that the requirement that the petition show the age and length of residence of the signers thereto is a jurisdictional one, and that the failure to comply therewith precludes the city auditor from receiving and examining the petition and certifying as to the result of his examination. The statute under consideration contemplates that the electors of a city shall have the absolute right to invoke the recall against the elective officers thereof. It should be construed so as to effectuate the purpose for which it was enacted. The statute prescribes the form and substance of the petition required to invoke the recall, but it nowhere declares that a departure from any of the provisions of the statute shall render a petition invalid. Williams v. Sherwood, 51 N.D. 520, 200 N.W. 784. The prime essential, as regards signers to a recall petition, is that they shall be legally qualified electors at the election petitioned for. The statement on the petition showing the age and length of residence in the city of the signers thereto is to facilitate the identification of the signers (9 R.C.L. 1030) and to aid those whose duty it is to determine the sufficiency of the petition in the performance of their work. The information given in the petition in this case — being all the information required by § 3835, — seems to have been sufficient to enable the city auditor to perform the *Page 389 
duty enjoined upon him by the law, and he, after having made the examination required, certified that the petitions were in fact signed by more than the required number of legal signers, to wit, by to exceed 1,042 electors entitled to vote for a successor of the incumbent sought to be removed. In our opinion the requirement of § 3838 that a petition must show the ages of the petitioners and the length of their residences in the city is not a jurisdictional one and the failure of the petition in question here to do so did not render it fatally defective. It was still sufficient for presentation to the city auditor for examination and certification. See Osborn v. Merced County, 27 Cal.App. 85,148 P. 971; Chester v. Hall, 55 Cal.App. 611, 204 P. 237; Michaelson v. Wall Twp. 92 N.J.L. 72, 108 A. 145; Re Initiative Petition, 35 Okla. 49, 127 P. 862; O'Keeffe v. Dugan, 225 N.Y. 667, 122 N.E. 887. See also Williams v. Sherwood, supra.
(2) Did board of city commissioners have power to sit in review upon the action of the city auditor, and to inquire into the genuineness of the signatures of the purported petitioners? We think this question must be answered in the negative. This question involves a consideration of the following portion of § 3835: "If the petition shall be deemed to be sufficient, the auditor shall submit the same to the board of city commissioners without delay. If the petitions shall be found to be sufficientthe board of city commissioners shall order and fix the date forholding the said election. . . ." The contention that the board of city commissioners is vested with power to review the action of the city auditor is predicated upon that portion of the foregoing quotation which we have italicised. The contention is that this means that if the city commissioners find the petition to be sufficient they shall order an election and fix the date for the holding thereof. A superficial examination may lend some color to this contention, but when the language in question is read in connection with the remainder of the section and the provisions of the act of which it formed a part, there is, we think, no reasonable basis therefor. It will be noted that by the specific terms of § 3835 the city auditor is not only required to examine the recall petition for the purpose of ascertaining whether the same has been signed by a sufficient number of qualified signers, but he is authorized to employ extra clerical help to facilitate the performance of such duty; and in case he finds the petition to be insufficient *Page 390 
it is not to be presented to the board of city commissioners at all. And no provision is made for a review by the city commissioners of the acts of the city auditor in rejecting the petition for insufficiency. It will also be noted that in the sections relating to the initiative and referendum petitions the city auditor, and he alone, is required to examine and pass upon the sufficiency thereof. And by the amendment to § 3835 adopted in 1919, the city auditor was required to give the reasons for his determination in all cases where he found a recall petition to be insufficient. If the legislature had intended that the board of city commissioners should have power to review the acts of the city auditor it seems likely that it would also have required the city commissioners to give reasons for their determination in case they found the petition to be insufficient. It also seems probable that if the legislature had intended to vest the city commission with power to review the determination of the city auditor that it would have done so in specific terms. It is true § 3835 and the acts amendatory thereto require the board of city commissioners to call the recall election, but that is also true in case of initiative and referendum elections. We reach the conclusion, therefore, that the board of city commissioners had no authority to review the action of the city auditor as to the sufficiency of a recall petition. Similar conclusions have been reached by other courts construing statutes quite similar to the one under consideration here. Dunham v. Ardery, 43 Okla. 619, L.R.A. 1915B, 233, 143 P. 331, Ann. Cas. 1916A, 1148; Good v. San Diego, 5 Cal.App. 265, 90 P. 44. See also Lail v. People, 75 Colo. 459, 226 P. 300.
(3) Does the return herein present an issue of fact for determination? We think not. Leaving wholly on one side all question as to whether the matters which defendants seek to allege by way of defense can, in any event, be asserted in this proceeding, we are wholly agreed that the return presents no issue of fact. The allegations of the return are to the effect that it appears from an inspection of the petition that more than one signature thereto was written by the same person; and it seems to be assumed that it must be taken for granted that the names so signed were forgeries. Even though it be assumed that the question of false or fraudulent signatures to the petition may be raised in this proceeding (and on this question we express no opinion) and if it be *Page 391 
further assumed that the return sufficiently alleges that certain signatures on the petition appearing in the same handwriting are forgeries, we are still of the opinion that the allegations of the return fail to present any issue for determination in this proceeding. There is no allegation that the city auditor acted fraudulently in making his examination in arriving at his determination. Nor is there any allegation as to the number of alleged fraudulent or false signatures; or that if the alleged fraudulent signatures be disregarded that the signatures of a sufficient number of qualified electors will not appear on the petition. In other words, so far as the return is concerned the allegations thereof may all be true and yet there may remain upon the petition a sufficient number of qualified electors.
This disposes of the questions presented on this appeal, and it follows from what has been said that the judgment appealed from is right and must be affirmed.
BIRDZELL, NUESSLE, BURKE, and JOHNSON, JJ., concur.