ALVAH LINDABURY ET AL., PETITIONERS, v. THE TOWNSHIP OF CLINTON, IN THE COUNTY OF HUNTERDON, ET AL., RESPONDENTS.

Argued December 3, 1918—Decided December 13, 1918.

1. A local option election, held in a township at the general annual election, pursuant to the Local Option act (*Pamph. L.* 1918, *p.* 14, *ch.* 2), to determine whether the sale of intoxicating liquors as a beverage should be prohibited, will not be set aside because of failure to advertise specifically that the question was to be submitted at the general election, when it appears there was a full and fair expression of the popular will (as where four hundred and forty-two votes were cast on the question out of a total number of legal ballots of five hundred and three and a registry list of six hundred and forty-three), and it further appears that knowledge that the question was to be submitted at the election was brought home to the voters by mailing sample ballots (being a true copy of the official ballot) to every registered voter on or before the Wednesday preceding election day, as required by the act of April 7th, 1914. *Pamph. L., p.* 194.

2. By section 16 of the Local Option act (*Pamph. L.* 1918, *p.* 14, *ch.* 2), the result of any election is determined by a majority of the votes cast on the question, and a majority of the votes cast at the election is not required.

---

On petition, &c.

Before Justice Trenchard, pursuant to *Pamph. L.* 1918, § 25, *ch.* 2.

For the petitioners, *H. Burdett Herr.*

For the respondent the township of Clinton, *Paul A. Queen.*

For certain intervenors, *George S. Hobart* and *William C. Gebhardt.*

The opinion of the court was delivered by

Trenchard, J. This is a proceeding contesting the validity of an election held at the general election November 5th, 1918, to determine whether the sale of intoxicating liquors as a beverage shall be prohibited in the township of Clinton, in the county of Hunterdon, pursuant to *Pamph. L.* 1918, *ch.* 2, known as the Local Option act.

Among others, the following matters of fact are stipulated in writing:

(*a*) Notice of the general election to be held in said municipality on November 5th, 1918, was duly published and posted in accordance with the provisions of the General Election law. Said notice contained no reference to the question as to the sale of intoxicating liquor in said municipality, which was voted upon therein at said general election. (*b*) Sample ballots were mailed to every registered voter of said municipality, in the manner and at the time required by the General Election law. Said sample ballots contained therein the question "Shall the sale of intoxicating liquor as a beverage in the township of Clinton be prohibited?" together with the form of bracket for voting "Yes" or "No" and the "In-

structions to Voters," as specified in said chapter 2. (*c*) The official ballot used at said election on November 5th, 1918, was a true copy of said sample ballot. (*d*) At said election on November 5th, 1918, four hundred and forty-two votes were cast on the above question, of which two hundred and twenty-eight votes were in favor of the prohibition of the sale of intoxicating liquor as a beverage in said municipality and two hundred and fourteen were against said prohibition. (*e*) At said election of 1918 the total number of voters on the registry list was six hundred and forty-three; the total number of legal ballots cast thereat was five hundred and three. (*f*) The total number of votes for candidates at said election of 1918 was as follows: United States Senator (full term), four hundred and fifty-five; United States Senator (to fill vacancy), four hundred and fifty-five; Member of Congress, four hundred and fifty-two; State Senator, four hundred and seventy-six; Assembly, four hundred and fifty-three; County Freeholder, four hundred and sixty-three. (*g*) At the general election of 1917 the total number of voters on the registry list was six hundred and forty-nine; the total number of legal ballots cast thereat was four hundred and seventy-one. (*h*) The total number of votes for candidates at said election of 1917 was as follows: Sheriff, four hundred and fifty-one; Assembly, four hundred and thirty-two; County Freeholder, four hundred and fifty-seven; Coroner, three hundred and eight.

First, it is contended that the election should be set aside because of the failure to advertise that the question was to be submitted at the general election.

I think that contention unsound.

It is to be noted that there is no provision of the Local Option act requiring such advertisement when the question is to be voted upon at the *general election.*

There are, of course, explicit provisions for advertisement in the case of a *special election* (section 6), and in *Reed* v. *Township of Independence,* 92 *N. J. L.* 102 (opinion by Mr. Justice Minturn), a *special election* was set aside for want of the advertisement provided for in the statute.

But when, as here, an election on the question specified is to be held at the general election in November (that. is, in those cases when the petition was signed by not less than twenty per cent. nor more than thirty per cent. of the legal voters), the Local Option act itself does not require any advertisement that the question is to be submitted. Possibly, the reason for that is that in the case of a general election the county clerk is required to furnish sample ballots to the municipal clerk to be mailed by the board of registry and election to each registered voter on or before noon of the Wednesday preceding election day. *Pamph. L.* 1914, *p.* 194. The question or questions which are to be voted on in any particular municipality are, of course, included on this sample ballot, and this may have been regarded by the legislature as ample notice of the fact that such question is to be voted on.

The petitioners, however, seem to contend that in case, as here, the question is to be voted upon at the *general election,* advertisement is required by section 7 of the General Election law. *Comp. Stat., p.* 2074. With respect to that contention, it is to be observed that such section does not in terms so provide. But assuming, without deciding, that, by construction, that section requires the municipal clerk to advertise a referendum which is to be held at the *general election,* nevertheless, I think such election should not be set aside when it appears, as here, that there has been a full and fair expression of the voters.

A case in point is *Fletcher* v. *Collingswood,* 59 *Atl. Rep.* 90. The question was the validity of an election by which a majority of the voters of the municipality authorized the issue of bonds for the construction of streets and sewers. The election was held at the same time and place as the *annual election* for borough officers; notice of the time and place of the annual election was given as required by the Election law. There were five hundred and ninety-nine registered voters, of whom four hundred and thirty-eight voted for officers, four hundred and twenty-six voted on bonds for streets and four hundred and twenty-seven on sewers, of

whom two hundred and thirty-six voted in favor of the bonds for streets and two hundred and thirty-seven in favor of the sewers. Notices of the election upon the issue of bonds for streets and the construction of sewers were given, *except* that they failed to designate the place in the borough where the election was to be held. The court pointed out that as the election was held on the day fixed by law for the *annual borough election* (the second Tuesday in March) the voters must be presumed to know that the election was to be held on that date. In discussing the point that the vote for the bonds and the sewers was on a separate ballot instead of on the official ballot, the court said (on *p.* 91):

"The will of the voters, if there has been a full and fair expression of opinion, cannot be thwarted by the error of those who attended to printing the ballots. In this case a clear majority of all who voted for borough officers voted also in favor of the bonds and the sewers. *That fact demonstrates that there was a full and fair expression of opinion in favor of both propositions.*"

In *Winters* v. *Warmolts,* 70 *N. J. L.* 615, the city clerk, in publishing the notice of an *annual election* for aldermen in the city of Paterson, failed to make any mention at all of one of the offices (that is, for the so-called "short term") that was to be filled. Notwithstanding this failure to advertise, as required by section 7 of the General Election law, the court sustained the election on the ground that it appeared from the pleadings that there was a "full and fair election," saying that "its results, therefore, cannot be ignored by reason of the failure of the clerk to give the statutory notice" (*p.* 618).

In *Brown* v. *Street Lighting District,* 70 *N. J. L.* 762, the township clerk failed to put up notices of the *election, the time, place and purpose of which were fixed by the statute* under which the vote was to be taken. The statute required that notice be set up at least ten days before the election, but the clerk put up the notices only three days before the election. Two hundred and ten votes were cast, of which one hundred and fifty were in favor of an appropriation for a certain amount and sixty in favor of a certain smaller amount.

The argument against the validity of the election was based solely on the failure to set up the notice ten days in advance. It appeared that there was a very full vote at the election. The Court of Errors and Appeals affirmed the judgment of the Supreme Court sustaining the election. Speaking for the court, Mr. Justice Pitney said (at *p.* 765) :

"The rule to be derived from a review of the authorities is that where the time, place and purpose of an election are fixed by public law, all voters must take notice thereof, and such an election, if held, is not invalid because no special notice was given nor proclamation made; certainly not if it appear that there has been a fair expression of the will of the voters. *Special notice, where prescribed by statute, is intended for the purpose of greater publicity;* but the right to hold the election comes from the statute and not from the official notice. \* \* \* The question here is whether, in face of the fact that the will of the people has been fairly expressed, the election must be held void by reason of the mere failure to give in due season the statutory notice. In our view, in this as *in all cases of stated public elections, the requirement of notice is directory, intended to insure that knowledge of the approaching event shall be brought home to all the voters,* but not essential to the validity of the election."

So, in this present case, even if the General Election law requires notice of the local option referendum at a general election to be published, the failure to do so does not invalidate the result of the election when it appears that there has been a full and fair expression of the popular will, and I think that fact appears from the number of voters who voted upon the question presented. As pointed out in the Brown case, the purpose of a published notice is to insure that knowledge of the event be brought home to the voters. In the present case, not only was such knowledge brought home to them (as shown by the number of votes that were cast on the question), but it also appears that the sample ballots mailed to all the voters contained the question, and hence all voters who took the trouble to examine their sample ballots had

actual knowledge of the fact that there was to be such a referendum at the general election.

The principle of the Brown case has been followed in *Attorney-General* v. *Belleville,* 81 *N. J. L.* 200 (where an election was sustained in the face of serious error in the form of the ballot on the question relating to the incorporation of the town, when it appeared that there was a full and fair expression of the voters), and in *d'Espard* v. *Essex Fells,* 84 *Id.* 181, where the ballot which called for an expression of the voters as to the issue of bonds for certain public purposes was a separate ballot, notwithstanding that the General Election law required that such question be printed at the foot of the general election ballot; and where the notice required by the statute for the holding of a special election on the question was not given, and the statutory notice required for the holding of a general election was given.

Secondly, it is contended that the result is controlled by the fact that only a plurality of the votes cast at the election was in favor of prohibition. But that is not so. Section 16 of the act expressly provides that the result of any election thereunder shall be determined by a majority "of the votes cast on the question submitted."

I have thus dealt with the only questions argued. I have not considered and do not decide any other question.

The election under review will be affirmed.