114 N.J. Super. 243 (1971)
275 A.2d 771
JAMES A. RICHARDS, PLAINTIFF,
v.
CAROL J. BARONE, TOWN CLERK OF THE TOWNSHIP OF CLINTON, MILDRED C. LARASON, CLERK OF HUNTERDON COUNTY, ALL MEMBERS OF THE CHARTER COMMISSION, DEFENDANTS, BERNARD P. RABB, GEORGE O. ELLIS, AND RUTH WOOD, DEFENDANTS-INTERVENORS.
Superior Court of New Jersey, Law Division.
Decided March 25, 1971.
*244 Mr. Donald W. Morrow for plaintiff James A. Richards (Mr. James W. Miller, on the brief).
Mr. Roger Cain for defendants Carol J. Barone and Charter Study Commission (Messrs. Felter and Cain, attorneys).
*245 Mr. Francis E. Pisani, II for defendants-intervenors (Mr. Oscar W. Rittenhouse, attorney).
BEETEL, J.C.C. (temporarily assigned).
This is an action brought under N.J.S.A. 19:29-1(i) to set aside a general election on the ground that the public question and the names of several candidates were not published in accordance with the general election laws and certain provisions of the Faulkner Act. N.J.S.A. 40:69A-1 et seq. Rabb, Ellis and Wood were granted leave to intervene as parties defendant on December 4, 1970 by consent of the parties. Defendant Larason has informed the court, through her attorney, that she takes no position in the outcome of the matter and consequently has not appeared during the litigation, in person or through counsel, and has not participated in oral or written argument of the matter.
The case is now before the court on two motions, one by plaintiff's show cause order why the passage of the public question and election of candidates to the charter commission should not be declared invalid, null and void; the other motion being by defendants-intervenors for a judgment of dismissal based on the pleadings, in the form of a motion to dismiss the complaint. Both motions were argued simultaneously and are treated herein as cross-motions for summary judgment.
The factual basis for the present action is not in dispute. On August 6, 1970 the governing body of Clinton Township passed an ordinance authorizing the following public question:
Shall a charter commission be elected to study the charter of the Township of Clinton and to consider a new charter or improvements in the present charter and to make recommendations thereon?
to be placed on the ballot of the general election to be held on November 3, 1970. This was done in accordance with N.J.S.A. 40:69A-1. The ordinance was published by title *246 only in the Hunterdon County Democrat on August 13, 1970. That notice did not mention when the charter study election would appear on the ballot, merely stating that
1. An election shall be held on the following question; [question stated]
2. The election shall be held on the above question in accordance with the applicable provisions of Title 40, Chapter 69A of the Revised Statutes.
Notice of the general election was published two weeks prior to the closing of the election rolls on September 24, 1970, and on October 22, and again on October 29, 1970. Each publication was in the Hunterdon County Democrat. None of the published notices[1] mentions the fact that the charter study question would be placed on the ballot for determination at the November election. It is this failure to include specific notice of the date on which the public question election would be held which plaintiff contends vitiates the election.
Plaintiff's ex parte applications to this court and to the assignment judge of the vicinage seeking to have the charter study question removed from the ballot being unsuccessful, an election was held on November 3, 1970, resulting in an affirmative response to the charter study question by a vote of 864 to 472. At the election 74% of the registered voters of the township cast their votes, although not all of them voted on the charter study question. At the same time a charter commission consisting of five members wes elected, as required by N.J.S.A. 40:69A-2. This action ensued.
There is no question that there has been a failure by the election officials here involved to comply with the mandatory provisions of N.J.S.A. 19:12-7(II)(b)[2], since the *247 fact that a public question was to be presented is not mentioned. The key issue upon which the validity of the presentation of the question must stand or fall is whether the failure to advertise or publish notice of the public question so vitally influenced the election proceedings as to have repressed or contravened a full and free expression of the popular will of the voters of the Township of Clinton. Sharrock v. Borough of Keansburg, 15 N.J. Super. 11 (App. Div. 1951).
The cases cited by plaintiff in support of his thesis are somewhat inapposite; Hodges v. Van Fleet, 55 N.J. 528 (1970), not bearing on election procedure at all; Michaelson v. Wall Tp., 92 N.J.L. 72 (Sup. Ct. 1918), dealing with special and not general elections, and Reed v. Independence Tp., 92 N.J.L. 102 (Sup. Ct. 1918), relying on the Michaelson case. The questions raised by plaintiff are not to be taken lightly, however, since we are involved here with one of the basic aspects of a democratic society  the right of the voting citizen to be informed of the matters with regard to which he is asked to make a decision. If failure to notify the electorate is found to have resulted in an uninformed vote, then the election should be set aside and a new election, properly advertised, should be ordered.
There being no cases specifically on point with respect to the subject matter of public questions under the Faulkner Act, it would appear that one must look for guidance to the State's election laws (N.J.S.A. 19:1-1 et seq.) and the cases arising thereunder.
N.J.S.A. 19:29-1 sets forth nine specific grounds upon which voters of this State or any of its political subdivisions *248 may contest an election.[3] If the doctrine of expressio unius est exclusio alterius were deemed to apply to to this provision of the statute, plaintiff's allegations would be deemed to come within the terms of N.J.S.A. 19:29-1(a), "malconduct * * * on the part of the members of the district board," in that they failed to be sure that the public question was included in the published notices. However, since the wording of the statute is that an election "may be contested," not "must be contested," it is not necessary to stretch the language of the statute and it would appear this case is properly before the court.
In Sharrock v. Keansburg, 15 N.J. Super. 11 (App. Div. 1951), where the county clerk failed to cause to be printed on the ballot, immediately below the printed questions, an explanatory statement of the technical language appearing in the statute, the election was upheld. There, as here the *249 precise situation involved was not covered by the existing statutes, and the court said:
* * * But where * * * there is no legislative declaration, the courts will consider the nature of the irregularity, the significance of its influence and consequential derivations in order to determine whether the digression or deviation from the prescribed statutory requisitions had in reasonable probability so imposing and so vital an influence on the election proceedings as to have repressed or contravened a full and free expression of the popular will, and thus deduce the legislative intent reasonably to be implied. [at 17]
The court went on to state, in language particularly appropriate to the situation at hand, that
* * * The appropriate terms and conditions of the statute [regarding preparation of official ballots] constitute the mandate which the public officer is not privileged to disobey. If his neglect or wilful disregard has served to frustrate or thwart the full and free expression of the will of the voters * * *, his disobedience will vitiate the ballots and nullify the affected election return * * * But if it is evident that notwithstanding the dereliction of duty of the officer there was a fair election and an honest return and no violation of such matters as the recognized inherent and inviolable rights of the voters, the court in the public interest will have frequently ignored the harmless irregularity. [at 18; emphasis supplied, citations omitted]
See also Wene v. Meyner, 13 N.J. 185 (1953)
It would thus appear that our courts no longer adhere strictly to the holding of Reed v. Independence Tp., supra, that where "procedure is statutory * * * [it] must be strictly construed in the interest of the public." 92 N.J.L. at 103.
With regard to the first criterion, the "nature of the irregularity" has already been set forth, namely the admitted failure to publish notice of the proposed public question as required by N.J.S.A. 19:12-7(II) (a) and (b). The publication of the August 6, 1970 ordinance by title only clearly does not meet the standard set up by the statute.
This admitted omission could have been such as to vitiate the election were it not for several other factors which fortunately *250 do appear in the record. Affidavits of David Riley, Virginia Hurford and Katharine Apgar, election judges of the Township of Clinton, immediately prior to the election in question, indicate that sample ballots for the 1970 general election were mailed to the residents of their respective districts on October 27, 1970. Plaintiff alleges that he received a sample ballot on October 29, 1970, and so it would be fair to assume that most of the residents of the township would have received their sample ballots at approximately the same date, almost a week prior to the election.
In Lindabury v. Clinton Tp., 93 N.J.L. 37 (Sup. Ct. 1918), concerning an election to determine whether the sale of intoxicating liquors as a beverage should be permitted in the township, said election being held pursuant to the Local Option Act, L. 1918, c. 2 (the elections contested in Reed v. Independence Tp. and Michaelson v. Wall Tp., supra, arose under the same act), the court held that since the county clerk was required to furnish sample ballots to be mailed to each registered voter, failure to advertise the public question was not fatal.
While mere mailing of the sample ballots alone may not be sufficient to vitiate the failure to advertise the charter study question, still other circumstances combined with that factor to overcome the defect. This court can take judicial notice that the issue of changing the form of the governing body of the Township of Clinton has been before the voters of the township for well over a year, more or less continuously. The case of Hodges v. Van Fleet, 55 N.J. 528 (1970), dealing with another facet of this issue, was before this court last winter. Hunterdon County has only one major newspaper, which is read regularly by most citizens of the county. The publicity given to the issue of a charter study commission by this newspaper are so generally known and of common notoriety within the area of Hunterdon County, that it cannot reasonably be the subject of dispute. Although not mentioned specifically by the parties, this is general knowledge. See Evidence Rule 9(2).
*251 The great amount of publicity, together with the sample ballots, tends to negate the proposition that the electorate went into the voting booths on election day and were confronted with a public question which was "sprung" on them, as it were. There obviously was a great deal of interest in the outcome of the election; 74.4% of the registered voters voted. Of the 1508 voters who did go to the polls, 1338 voted on the charter study question, approximately 65% of all the registered voters in the township.
The fact that the charter study commission was approved by nearly a 2-1 vote of those who actually voted on the question is a further indication that there has indeed been a full and free expression of the popular will. If the vote were significantly closer, it is possible that the procedural omission would have had the effect of imposing so vital an influence on the election that the election would have been vitiated.
However, in the face of so many factors indicating that the will of the people has been made known, this court has no alternative but to uphold the approval of the charter study question and the election of the charter study commission members, resulting from the election of November 3, 1970.
In accordance with the provisions of N.J.S.A. 19:29-14, costs are assessed against plaintiff.

APPENDIX "A"

TOWNSHIP OF CLINTON NOTICE OF GENERAL ELECTION
Notice is hereby given that the District Boards of Election and Registry in and for the TOWNSHIP OF CLINTON, County of Hunterdon, State of New Jersey, will meet at the Municipal Building, Annandale, on TUESDAY, NOVEMBER 3, 1970 and conduct the General Election between the hours of 7 A.M. and 8 P.M. (Eastern Standard Time) for the purpose of electing the following:

*252 1 Member of U.S. Senate  4 year term.
1 Member of U.S. House of Representatives  2 year term.
Sheriff  4 year term.
1 Member of the Board of Chosen Freeholders for 3 year term.
At said General Election the following municipal officers to be elected are:
One Member of the Township Committee for 3 years.
The Boundaries of Clinton Township Elections Districts are as follows:
District No. 1: Lands North of Route 78 and West of Petticoat Lane and Mt. Grove Road. Voting held in Municipal Building, Annandale, N.J.
District No. 2: Lands East of Petticoat Lane and Mt. Grove Road and North of Interstate Route 78 to the Borough of Lebanon boundary line; South of Old Mountain Road including lands up to Round Valley Reservoir State Lands, voting held at Municipal Building, Annandale, N.J.
District No. 3: Lands South of Route 78 to Lebanon Borough Line and west of State Lands of Round Valley Reservoir. Voting held at Municipal Building, Annandale, N.J.
Inquiries as to the locations of polling places in the township may be made at the municipal building, 735-5328, from 9 A.M. to 4 P.M.
 (Pr.'s. Fee $25.00) 23.2
 CAROL J. BARONE
 Township Clerk
NOTES
[1] See Appendix A, consisting of the published notice of October 29, 1970. This notice is substantially identical to the other published notices.
[2] "* * * in such notice it shall be necessary to include only the municipal officers to be nominated or elected and the public questions to be voted upon in the municipality in which such newspaper or newspapers are published; and except that in all municipalities in which no newspaper is published, such notice required to be published in a newspaper or newspapers circulating in such municipality, shall include only the municipal officers to be nominated or elected and the public questions to be voted upon in such municipality in which such newspaper or newspapers circulate." (Emphasis supplied)
[3] "(a) Malconduct, fraud or corruption on the part of the members of any district board, or of any members of the board of county canvassers, sufficient to challenge the result;

(b) When the incumbent was not eligible to the office at the time of the election;
(c) When the incumbent had been duly convicted before such election of any crime which would render him incompetent to exercise the right of suffrage, and the incumbent had not been pardoned at the time of the election;
(d) When the incumbent had given or offered to any elector or any member of any district board, clerk or canvasser, any bribe or reward, in money, property or thing of value for the purpose of procuring his election;
(e) When illegal votes have been received, or legal votes rejected at the polls sufficient to change the result;
(f) For any error by any board of canvassers in counting the votes or declaring the result of the election, if such error would change the result;
(g) For any other cause which shows that another was the person legally elected;
(h) The paying, promise to pay or expenditure of any money or other thing of value or incurring of any liability in excess of the amount permitted by this title for any purpose or in any manner not authorized by this title;
(i) When a petition for nomination is not filed in good faith or the affidavit annexed thereto is false or defective."