131 N.J. Super. 395 (1974)
330 A.2d 52
THOMAS F.X. MAGURA, PLAINTIFF,
v.
ELIZABETH VAN DUYNE SMITH, LEONARD SIMON, PAUL P. GENUALDO, BIANCA HANCOCK, J. GEORGE AUPPERLEE AND JOHN TROMMELEN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 4, 1974.
*397 Mr. William J. Bate for plaintiff.
Mr. Jerome A. Vogel for defendant Trommelen (Messrs. Jeffer, Walter, Tierney, DeKorte, Hopkinson and Vogel, attorneys; Mr. Herman Jeffer on the brief).
ROSENBERG, J.S.C.
Plaintiff in the instant matter is the unsuccessful candidate for mayor of Prospect Park. Defendants include the superintendent of elections of Passaic County, members of the Passaic County board of elections and the successful mayoral candidate. By complaint filed November 12, 1974 plaintiff seeks to have set aside the election for mayor of Prospect Park held on November 5, 1974 and to have the court declare a new election. Argument was heard on November 27, 1974 on the return of an order to show cause. At that time this court determined that the matter should be set down for a plenary hearing pursuant to R. 4: 67-5. Such a hearing was held on December 4, 1974.
The basic facts giving rise to plaintiff's challenge are not in dispute. Prospect Park, the smallest municipality in Passaic County, was comprised of four election districts on November 5, 1974, each district containing one polling place. For a period of approximately 2 1/2 hours commencing at 7 A.M., the time at which the polls were to open, voters in district three were unable to cast ballots because of a malfunction in the only voting machine at the polling place. Plaintiff avers in an uncontradicted affidavit that when this came to his attention at approximately 8:45 A.M. he telephoned defendant Smith, the superintendent of elections, and requested an extension of the hours of voting in the third district to compensate for the time lost while the polling place was closed. Mrs. Smith refused this request. Thereafter the machine was repaired and the polling place remained open until 8 P.M. A count of the total vote for all districts showed defendant Trommelen winning the election by a vote of 929 to 911. These figures were confirmed on a recount. It is plaintiff's contention that as a result of the closing of the third district *398 polling place a number of voters were turned away from the polls and were unable to return later in the day because of other committments. In view of the closeness of the vote he claims that the inability of these voters to cast their ballots cost him the election. He thus contests the election and seeks a new one.
In N.J.S.A. 19:29-1 et seq. the Legislature has provided a comprehensive scheme by which election contests may be initiated and pursued. Jurisdiction of this court in such matters is founded in N.J.S.A. 19:29-2. Procedure governing commencement, trial and disposition of an election contest is governed by N.J.S.A. 19:29-2 to 19:29-14. Grounds for such a contest are laid out in N.J.S.A. 19: 29-1. With jurisdiction established the court must first determine whether sufficient grounds exist upon which plaintiff can base a contest. This requires consideration of the instant facts in view of the requirements of N.J.S.A. 19:29-1.
N.J.S.A. 19:29-1 provides a number of alternative grounds upon which the outcome of an election or nomination may be contested. Two provisions of that section are applicable to the instant case:

19:29-1. Grounds stated
The nomination of election of any person to any public office or party position, or the approval or disapproval of any public proposition, may be contested by the voters of this State or of any of its political subdivisions affected thereby upon 1 or more of the following grounds:
a. Malconduct, fraud or corruption on the part of the members of any district board, or of any members of the board of county canvassers, sufficient to challenge the result;

* * *
e. When illegal votes have been received, or legal votes rejected at the polls sufficient to change the result;

* * *
In this case plaintiff does not allege any fraud, corruption or illegality on behalf of any of the defendants. Rather, his argument is that the breakdown of the machine in the third district and the resulting shutdown of the polls there constituted *399 an irregularity meriting declaration of a new election. There appears to be no reported case in this State in which an election contest has been based on the mechanical breakdown of a voting machine and a subsequent disruption in balloting. Therefore this case is one of first impression.
Applying the standards of N.J.S.A. 19:29-1 to the present situation indicates a number of potential grounds upon which plaintiff's action may rest. Since the complaint is founded on the fact that certain voters allegedly were denied their right to vote, subsection (e) appears to be on point. The effect of the language used therein is to open to contest an election where illegal votes are cast or bona fide votes are "rejected." A proper reading of this passage encompasses the present situation in which various legal voters were turned away from the polls because of a mechanical breakdown. The statute does not define the term "rejected" nor does it limit its application to any particular circumstances. Thus it is properly read to include any situation in which qualified voters are denied access to the polls including a denial because of shutdown of a voting machine.
N.J.S.A. 19:29-1(a) affords a second basis for plaintiff's action in that there appears to have been "malconduct" on the part of election officials in their handling of the Prospect Park election. This position takes an expansive view of "malconduct" interpreting that term to mean a failure to follow affirmative statutory requirements and not "bad" or illicit conduct. Such a reading was adopted in Richards v. Barone, 114 N.J. Super. 243 (Law Div. 1971), where the court observed that failure by election officials to publish a public question in accordance with statute could be construed as "malconduct" for the purpose of supporting an election contest. Under N.J.S.A. 19:15-2 the election board is under an obligation to open the polls at 7 A.M., close them at 8 P.M. and keep them open at all times between those hours. This clearly was not done in the third district. Also, the fact that the machine was inoperative at 7 A.M. when voting was to commence leads to the inescapable conclusion *400 that the machine was not in proper working order before the polls opened. This is in violation of the express mandate of N.J.S.A. 19:48-6 that "The county board of elections or the superintendent of elections * * * shall have the machine or machines * * * at the proper polling place * * * in good and proper order for use at such election." Such failures comprise serious deviations from the standards of conduct set out by the Legislature for election officials, and therefore comprise "malconduct" on their part.
In addition to the requirement that voting machines be put in good working order, the statute also provides procedures in the event that a machine should malfunction. N.J.S.A. 19:48-7 is designed to avoid the precise situation encountered in the instant case where voters were unable to cast their ballots:

19:48-7 Voting machine out of order
If any voting machine being used in any election district shall, during the time the polls are open, become damaged so as to render it inoperative in whole or in part, the election officers shall immediately give notice thereof to the county board of elections or the superintendent of elections or the municipal clerk, as the case may be, having custody of voting machines, and such county board of elections or such superintendent of elections or such municipal clerk, as the case may be, shall cause any person or persons employed or appointed pursuant to section 19:48-6 of this Title to substitute a machine in perfect mechanical order for the damaged machine. At the close of the polls the records of both machines shall be taken and the votes shown on their counters shall be added together in ascertaining and determining the results of the election. Unofficial ballots made as nearly as possible in the form of the official ballot may be used, received by the election officers and placed by them in a ballot box in such case to be provided as now required by law, and counted with the votes registered on the voting machines. The result shall be declared the same as though there had been no accident to the voting machine. The ballots thus voted shall be preserved and returned as herein directed with a certificate or statement setting forth how and why the same were voted.
Both the language and spirit of this section indicates an attempt by the Legislature to provide a reasonably prompt and efficient method for dealing with the unforeseen but inevitable *401 breakdown of voting machines. Perhaps the most distressing aspect of the situation which occurred in Prospect Park was the failure of Passaic County officials to effectively cope with the machine's malfunction once it arose. The language of the statute is mandatory in directing that a working machine be substituted for the inoperative one. Speedy repair of the damaged machine would also fall within the mandatory language of the section, but repair some two hours after the malfunction was noted clearly is unsatisfactory. As for the use of unofficial ballots, although the language authorizing their use is discretionary, they would appear to offer an economical and efficient manner of coping with unexpected mechanical troubles like those experienced here. This is particularly true in light of the required printing of facsimile sample ballots per N.J.S.A. 19:14-21 et seq. which seem well suited for emergency purposes and would be readily obtainable for such use. It does not seem unreasonable to charge election officials with a duty to anticipate the breakdown of voting machines and adequately plan for such a contingency. There is no question but that defendant officials did not do that here. A desirable solution may be for the Legislature to make mandatory the availability of unofficial ballots wherever voting machines are used. In any event, the conduct of officials in coping with the problem once it arose constituted "malconduct" sufficient upon which to ground an election contest.
With the grounds for plaintiff's contest established the question becomes whether the instant facts are compelling enough to merit the relief sought. The standard of proof to be borne by the contestant is laid out in N.J.S.A. 19:29-1(a) and 19:29-1(e) as evidence "sufficient to challenge the result" and "sufficient to change the result" respectively. In earlier cases involving election contests this language has been interpreted to require a definitive showing that the number of votes irregularly cast or rejected was sufficient to have altered the outcome of the election. Application of Murphy, 101 N.J. Super. 163 (App. Div. 1968); In re Hunt, 15 *402 N.J. Misc. 331, 191 A. 437 (Cir. Ct. 1937); Lehlbach v. Haynes, 54 N.J.L. 77 (Sup. Ct. 1891). Applying this standard to the instant case, since the margin of victory for Trommelen was 18 votes, plaintiff must prove that at least that many voters were frustrated in their access to the polls.
Consideration of plaintiff's proofs shows that he has failed to sustain his burden. At the time he filed his complaint plaintiff submitted two affidavits, one from a voter who averred that he was turned away from the polls while the machine was inoperative and was unable to return to vote later in the day because of prior committments, and the other from a poll worker who alleged that "dozens of people" came to the district three polling place to vote but were unable to do so, and that to the best of her recollection "many of those who wanted to vote but could not did not return to vote later in the day." Largely because of the assertion in this second affidavit the plenary hearing was set down in order to give plaintiff leave to produce proof of the "many" disgruntled voters alluded to. At the time of the hearing plaintiff's counsel represented to the court that only three voters in addition to the first affiant could be located who were turned away and were unable to return. Even giving plaintiff's proof the most indulgent treatment it is clear that he has failed to sustain his burden. As regrettable as the conduct of the election officials may have been in dealing with the machine breakdown, in light of the evidence offered it can only be viewed as the equivalent of harmless error. Since it can not be said that the result of the election contravened or thwarted a free expression of the popular will the election of defendant Trommelen must stand and plaintiff's contest must fail. Wene v. Meyner, 13 N.J. 185, 196 (1953); Sharrock v. Keansburg, 15 N.J. Super. 11, 17 (App. Div. 1951).
The complaint is dismissed.